UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No.: 4:26-cv-40099

| |
|---|
| YVETTE DIGAN, LORDEVER DIGAN & GRACE DIGAN,<br>               Plaintiffs<br><br>v.<br><br>MGP INGREDIENTS, INC., MASSACHUSETTS FINE WINES & SPIRITS, LLC d/b/a TOTAL WINE & MORE, RYAN ADDECHE, TREVOR BOWEN, JULIAN TAGUE, JAMES GIKAS, ANDREW MITCHELL, THEO SAWYERS, RICHARD HUGHES, PHILIP CLAY, CHRISTINE ZIEV, WORCESTER POLYTECHNIC INSTITUTE, THE FRATERNITY OF PHI GAMMA DELTA, INC, PI IOTA CHAPTER OF PHI GAMMA DELTA, INCORPORATED, ZETA PSI FRATERNITY, INC., PI TAU ELDERS, INC., LUXCO, INC., HENRY PHARRIS and JOHN DOES 1-30,<br>               Defendants |

## PLAINTIFFS' OPPOSITION TO MGP INGREDIENTS, INC.'S MOTION TO DISMISS

## I. INTRODUCTION

Plaintiffs Yvette Digan, Lordever Digan, and Grace Digan respectfully oppose Defendant MGP Ingredients, Inc.'s ["MGPI"] Motion to Dismiss. MGPI seeks dismissal on four grounds: (1) lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2); (2) failure to state a claim under Fed. R. Civ. P. 12(b)(6); (3) the component parts doctrine; and (4) open and obvious danger. Each argument fails on the law and the facts.

1

MGPI is not a passive, distant supplier of a commodity ingredient. In 2021, MGPI acquired Luxco, Inc., ["Luxco"], the maker of Everclear, for $475 million, installed Luxco's longtime CEO as Chairman of MGPI's own Board of Directors, created a unified "Branded Spirits" segment encompassing the entire Everclear product line, and assumed direct operational control over Luxco's product lines, including the 190-proof grain neutral spirits that caused Yvette Digan's catastrophic burn injuries. Compl. ¶¶ 69-75. MGPI cannot now disclaim jurisdiction over, or responsibility for, injuries caused by the very product it manufactures, controls, and from which it profits.

The Complaint alleges in extensive, well-pleaded factual detail that MGPI manufactured, distilled, sold, and distributed an unreasonably dangerous 190-proof spirit without adequate safety features or warnings; that MGPI and Luxco operate as a single, integrated enterprise; and that MGPI's product was the direct and proximate cause of Yvette Digan's injuries. These allegations, accepted as true and with all reasonable inferences drawn in Plaintiffs' favor, are more than sufficient to survive a motion to dismiss.

## II. FACTUAL BACKGROUND

MGPI is a foreign corporation based in Atchison, Kansas. Compl. ¶ 4. MGPI manufactures and distills 190-proof grain neutral spirits, which it sells and supplies to its wholly owned subsidiary, Luxco, Inc., for use in Luxco's Everclear alcohol product. Compl. ¶¶ 24, 75.

On January 25, 2021, MGPI announced an agreement to acquire Luxco and its affiliated companies. The acquisition was completed effective April 1, 2021. Compl. ¶ 69. Following the acquisition, MGPI and Luxco became an integrated, combined entity operating under unified corporate direction and control. The transaction was explicitly designed to "significantly increase MGPI's scale in the branded-spirits sector" and to establish "an additional platform for future

growth" by combining and leveraging the resources, management, and distribution networks of both companies. Compl. ¶ 70.

As a condition of the acquisition, an integrated organizational structure created direct operational oversight by MGPI of Luxco's product lines, including Everclear. Compl. ¶ 72. MGPI appointed executives from the combined entity to manage the Branded Spirits division, all operating under unified MGPI corporate policies, procedures, compliance frameworks, and strategic direction. Compl. ¶ 73.

MGPI's integration of Luxco included direct responsibility for the manufacture, sale, distribution, and marketing of all products within Luxco's portfolio, including Everclear, the 190-proof grain neutral spirit that was the direct cause of Yvette Digan's catastrophic injuries. MGPI's assumption of operational control over Luxco's branded spirits division included explicit responsibility for product safety, warning protocols, and distribution practices. Compl. ¶ 74. At all material times, Luxco operated as an effectively controlled subsidiary of MGPI, with its operations, management, and product decisions subject to MGPI's direction, oversight, and corporate governance structures. Compl. ¶ 75.

Luxco included MGPI's 190-proof distilled spirit in the finished Everclear product, which was then distributed to retail sellers including Total Wine & More ("Total Wine"). Compl. ¶ 25. On or before May 13, 2025, Total Wine sold the bottle of Everclear in question from its Shrewsbury, Massachusetts location to a purchaser. Compl. ¶ 26. The bottle of Everclear sold by Total Wine was distilled, manufactured, sold, and distributed to Total Wine by MGPI and Luxco. Compl. ¶ 27.

On or before May 13, 2025, Defendant Richard Hughes purchased or caused to be purchased a bottle of Everclear in violation of applicable policies prohibiting the possession or

use of high-proof alcohol. Compl. ¶ 28. The bottle was brought to the Pi Iota fraternity house and subsequently transferred by Hughes to the Zeta Psi fraternity house in Worcester, Massachusetts, where it was accessible for use at a fraternity social gathering on May 13, 2025. Compl. ¶¶ 29-30.

On or about May 13, 2025, Yvette Digan was an invited guest at a social gathering at the Zeta Psi fraternity house. Compl. ¶ 33. During the gathering, a game called "fire stump" began in which fraternity members used a hammer to drive nails into a tree stump while flammable liquid burned on top of the stump. Compl. ¶ 45. The Defendant, Henry Pharris poured the bottle of Everclear 190-proof alcohol onto or near the active fire. Compl. ¶ 50.

While the Everclear was being poured onto or near the active fire, an event called flame-jetting occurred in which the fire followed the path of the alcohol back up from the stump towards the bottle, ignited the internal gas volume, and as a result, a fireball erupted, propelling burning liquid outward. Compl. ¶ 51. Yvette Digan, a guest at the party and bystander to the fire stump game, was engulfed in flames from the fireball. Compl. ¶ 52. As a result, Ms. Digan suffered catastrophic burn injuries, for which she continues to receive treatment.

## III. LEGAL STANDARD

### A. Motion to Dismiss for Lack of Personal Jurisdiction (Fed. R. Civ. P. 12(b)(2))

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing sufficient facts to support jurisdiction. *Good Hope Indus., Inc. v. Ryder Scott Co.*, 378 Mass. 1, 3 (1979).

> When assessing whether personal jurisdiction exists with respect to a non-resident defendant, a federal court exercising diversity jurisdiction acts as the "functional equivalent of a state court sitting in the forum state." Baskin-Robbins, 825 F.3d at 34 (quoting Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995)). Therefore, [the plaintiff] must show that the exercise of personal jurisdiction over [the non-resident defendant] in Massachusetts would satisfy not only the strictures of the Due Process Clause but also the

4

strictures of the Massachusetts long-arm statute, <u>see</u> Mass. Gen. Laws ch. 223A, § 3.

<u>Kuan Chen v. United States Sports Acad., Inc.</u>, 956 F.3d 45, 54 (1st Cir. 2020).

## B. Motion to Dismiss for Failure to State a Claim (Fed. R. Civ. P. 12(b)(6))

Under Fed. R. Civ. P. 12(b)(6), a complaint should not be dismissed unless it fails to state a claim upon which relief can be granted. The court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Iannacchino v. Ford Motor Co.*, 451 Mass. 623, 635-36 (2008). A complaint need only set forth "factual 'allegations plausibly suggesting (not merely consistent with)' an entitlement to relief." *Id.* at 636 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Iannacchino*, 451 Mass. at 636.

## IV. ARGUMENT

## A. This Court Has Personal Jurisdiction Over MGPI

MGPI's jurisdictional argument ignores the well-pleaded allegations of the Complaint, which establish both statutory and constitutional bases for the exercise of personal jurisdiction over MGPI.

1. The Massachusetts Long-Arm Statute Is Satisfied

G.L. c. 223A, § 3(a) authorizes personal jurisdiction over a defendant who "transact[s] any business in this commonwealth," where the cause of action arises from or relates to that transaction. The SJC has consistently construed this provision broadly. <u>Good Hope Indus., Inc. v. Ryder Scott Co.</u>, 378 Mass. 1, 7 (1979). See also <u>Tatro v. Manor Care, Inc.</u>, 416 Mass. 763, 767 (1994) ("The 'transacting any business' clause [in Section 3] has been construed broadly"). For

jurisdiction to exist under § 3(a), two requirements must be satisfied: "the defendant must have transacted business in Massachusetts, and the plaintiff's claim must have arisen from the transaction of business by the defendant." Id. at 767.

Further, G.L. c. 223A, § 3 provides in pertinent part:

Section 3. A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's…

(d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth;…

G.L. c. 223A, § 3.

Here, the Complaint alleges that MGPI manufactured and distilled the 190-proof grain neutral spirits that constituted the Everclear product sold in Massachusetts. Compl. ¶¶ 24-27. MGPI sold and supplied these spirits to its wholly owned subsidiary, Luxco, knowing that Luxco would distribute the finished Everclear product throughout the United States, including Massachusetts. Compl. ¶¶ 25, 74. Indeed, MGPI assumed direct responsibility for the manufacture, sale, distribution, and marketing of all products in Luxco's portfolio, including Everclear, a product that was in fact sold at a retail location in Shrewsbury, Massachusetts. Compl. ¶¶ 26-27, 74. MGPI's product reached Massachusetts through an established, controlled distribution chain. These contacts constitute "transacting business" in Massachusetts under the long-arm statute.

Moreover, under § 3(d), jurisdiction is authorized over a defendant who "caus[es] tortious injury in this commonwealth by an act or omission outside this commonwealth" if the defendant "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed . . . in this commonwealth." MGPI's

6

continuous sale of 190-proof spirits into the Massachusetts market through Luxco's distribution network satisfies this provision.

Additionally, the "transacting any business" standard is not limited to a defendant's direct physical contacts with the Commonwealth. A defendant who acts "through an agent" satisfies the statute. G.L. c. 223A, § 3. The Complaint alleges that Luxco acted as MGPI's agent in distributing Everclear in Massachusetts. Compl. ¶¶ 75, 108.

2.  The Exercise of Jurisdiction Comports with Due Process

The Due Process Clause requires that a defendant have "minimum contacts" with the forum state such that the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). The due process analysis requires the plaintiff to demonstrate: (1) purposeful availment of commercial activity in the forum state by the defendant; (2) the relation of the claim to the defendant's forum contacts; and (3) that the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." Kuan Chen v. United States Sports Acad., Inc., 956 F.3d 45, 55 (1st Cir. 2020), citing, Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)).

MGPI purposefully availed itself of the Massachusetts market. MGPI manufactures the core ingredient of Everclear, 190-proof grain neutral spirits, and, following its $475 million acquisition of Luxco, assumed unified operational control over the entire Everclear product line, including its nationwide distribution. Compl. ¶¶ 69-74. MGPI knew that Everclear was distributed and sold in Massachusetts, including through retail outlets such as Total Wine's

Shrewsbury location. Compl. ¶¶ 25-27. MGPI derived substantial revenue from the sale of Everclear in Massachusetts as part of its Branded Spirits business segment. Compl. ¶ 72.

Plaintiffs' claims arise directly from MGPI's contacts with Massachusetts: the 190-proof spirits manufactured and sold by MGPI were incorporated into Everclear, sold at a Massachusetts retail location, and caused catastrophic injury in Massachusetts. There is a direct causal nexus between MGPI's forum-related activities and the harm alleged. Exercising jurisdiction over MGPI is entirely reasonable, given that MGPI derives economic benefit from selling its products in the Massachusetts market and it should reasonably anticipate being brought into court here.

3. Luxco's Massachusetts Contacts Are Attributable to MGPI

Even if MGPI's direct contacts with Massachusetts were insufficient standing alone, which they are not, jurisdiction is proper because Luxco's extensive Massachusetts contacts are attributable to MGPI under well-established principles of agency and alter ego liability. The SJC has held that the long-arm statute extends to a defendant who acts "through an agent." G.L. c. 223A, § 3. See Tatro, 416 Mass. at 767.

The Complaint alleges facts demonstrating that MGPI exercises pervasive operational control over Luxco, far exceeding ordinary parent-subsidiary oversight. Following the 2021 acquisition, MGPI integrated Luxco into its corporate structure, established a unified Branded Spirits segment, installed Luxco's former CEO as MGPI's Board Chairman, appointed combined-entity executives to manage Luxco's operations, and assumed direct responsibility for product safety, warning protocols, and distribution. Compl. ¶¶ 69-75. The Complaint specifically alleges that "Luxco operated as an effectively controlled subsidiary of MGPI, with its operations,

management, and product decisions subject to MGPI's direction, oversight, and corporate governance structures." Compl. ¶ 75. These allegations, taken as true, establish that Luxco functioned as MGPI's agent or alter ego in Massachusetts, and that Luxco's forum contacts, including the distribution and sale of Everclear in Massachusetts, are properly imputed to MGPI.

**B. The Complaint States Claims Upon Which Relief Can Be Granted**

In their complaint, the Plaintiffs allege that MGPI was the manufacturer and distiller of a 190-proof grain neutral spirit which was sold and supplied to Luxco for use in Luxco's Everclear product. *Plaintiff's Complaint*, ¶24. The Plaintiffs have brought claims against MGPI for negligence (Count One), breach of the warranty of merchantability (Count Two), breach of the warranty of fitness for a particular purpose (Count Three), and for violations of G.L. c. 93A (Count Four). Lordever Digan and Grace Digan have brought derivative loss of consortium claims under G.L. c. 231, §85X (Count Twenty-Two).

The Massachusetts Supreme Judicial Court in Nemirovsky v. Daikin N. Am., LLC, 488 Mass. 712, 717 (2021) held, "It is a well-settled principle of products liability law that, as a general matter, a commercial manufacturer of a defective product is liable for harm to persons or property caused by the defect." "This long standing concept of products liability draws on both warranty and tort law." *Id.*, at 717-718.

The SJC then continued in Nemirovsky to evaluate the liability of component part manufacturers.

> Many commercial products, however, comprise multiple components made by different entities not involved in the design of the integrated product. In such circumstances, a component manufacturer may be liable if the component itself was defective and the component's defect caused the harm. See Cipollone v. Yale Indus. Prods. Inc., 202 F.3d 376, 379 (1st Cir. 2000); Restatement (Third) of Torts: Products Liability § 5 & comment b (1998).

9

*Id.* MGPI cannot invoke the component parts doctrine when its own 190-proof spirit is alleged to be the source of the defect.

The Plaintiffs here allege that MGPI was the manufacturer and seller of a defective component part, 190-proof alcohol, of the finished Everclear product.  Liability should attach consistent with the well-settled principles of products liability law as recognized by the SJC.

1.  The Plaintiffs' Complaint States a Right to Relief in Negligence

MGPI owed a duty to manufacture the component part with reasonable care.  The Plaintiffs allege that the product was unreasonably dangerous and defective, whose risks outweighed any useful purpose.  Compl., ¶¶78 a.,b.  The Plaintiffs also allege that the product failed "to provide adequate warnings about the inherent dangers of 190-proof," id., ¶78e., alcohol in "the sale and distribution of the product."  Id. Rather than address all of the Plaintiffs' negligence claims, MGPI merely asserts that it had no duty to warn of open and obvious dangers. MGPI, as evidenced by its lack of argument, apparently has no quarrel with the Plaintiffs' negligence claims independent of the failure to warn claim.

First, whether a defect in any context is "open and obvious" is a question of fact. "Whether a danger is open and obvious is a question of fact for the jury to decide." Varley v. Walther, 105 Mass. App. Ct. 558, 561(2025).   In support of its motion to dismiss, MGPI relies on two cases, Pub. Serv. Mut. Ins. v. Empire Comfort Sys., Inc., 573 F. Supp. 2d 372, 378 (D. Mass. 2008) and Colter v. Barber-Greene Co., 403 Mass. 50 (1988).  Pub. Serv. Mut. Ins. Was decided on summary judgment grounds and Colter was decided post-trial on a motion j.n.o.v. MGPI has provided no support for its position that whether a hazard is "open and obvious" should be decided on a motion to dismiss.

The Complaint alleges that MGPI failed to provide reasonable and adequate warnings about the inherent dangers of 190-proof grain neutral spirits. Compl. ¶ 78(e). A 190-proof spirit is 95% ethanol, a flammable substance that, when poured near an open flame, can produce the precise "flame-jetting" phenomenon that caused Yvette Digan's injuries. Compl. ¶ 51. The Complaint alleges that MGPI knew or should have known of these dangers and failed to warn. Whether MGPI's warnings (or lack thereof) were adequate is a factual question that cannot be resolved on a motion to dismiss.

Further, even if "open and obvious" were a defense to a warning claim at the motion to dismiss stage, MGPI fails to appreciate the full nature of the hazard as pled by the Plaintiffs. The issue of an adequate warning is not limited to the fact that Everclear is flammable; "[t]hat high-proof alcohol is flammable is common knowledge," *Luxco Memo* at 15.[1] The Plaintiff alleges that due to Everclear being poured onto an active fire, "an event called flame-jetting occurred in which the fire followed the path of the alcohol back up from the stump towards the bottle, ignited the internal gas volume and as a result a fireball erupted, propelling burning liquid outward." *Complaint*, ¶51. It is a question of fact whether flame-jetting was an open and obvious danger, particularly to college-aged fraternity members or their invited guests, like the Plaintiff.

2. The Plaintiffs' Complaint States a Right to Relief for Breach of Warranty

The Plaintiffs have adequately pleaded their claims for breaches of the implied warranties of merchantability and fitness for a particular purpose. The Plaintiff submits that it was the

---

[1] Luxco also improperly attempts to interject "facts" into its argument. "Everclear's front label prominently displays "190 PROOF" and "95% alcohol by volume." *Luxco Memo*, p. 15. See also, "Everclear bore an adequate warning. The Complaint acknowledges that Everclear's label states: 'WARNING: FLAMMABLE LIQUID. HANDLE WITH CARE.' Compl. ¶35." This conclusory statement refers to a paragraph not contained in the present complaint. The Plaintiffs suggest through their pleading that an adequate warning would have raised the issue of flame-jetting.

multiple business transactions which began with the distillation of 190-proof alcohol and ended with the sale of Everclear from Total Wine to a member of the public, Compl., ¶¶24-27, which created the implied warranties. "Here, a warranty was created when the defendant sold the printing machine to the plaintiff's employer." Maillet v. ATF-Davidson Co., 407 Mass. 185, 192 (1990).

In addition to the creation of a warranty upon the sale of a good as recognized by the common law, in Massachusetts under G.L. c. 106, §2-314, a warranty of merchantability is implied in the sale of goods. "(1) Unless excluded or modified by section 2-316, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Mass. Gen. Laws Ann. c. 106, § 2-314 (West). The scope of that warranty, or the persons to whom the warranty extends, is defined by G.L. c. 106, §2-318.

> Lack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer, seller, lessor or supplier of goods to recover damages for breach of warranty, express or implied, or for negligence, although the plaintiff did not purchase the goods from the defendant if the plaintiff was a person whom the manufacturer, seller, lessor or supplier might reasonably have expected to use, consume or be affected by the goods.

Mass. Gen. Laws Ann. c. 106, § 2-318 (West). MGPI manufactured, distilled and sold 190-proof alcohol for consumption by the public. It sold the product to Luxco. MGPI knew that its product would be used to create Everclear. It was foreseeable that college-aged persons would purchase Everclear and "use, consume or be affected," by the product. MGPI knew that Everclear would be used around flames thus the inclusion of flame-specific (although inadequate) warnings on its labels. See supra, n.1. Stated differently, if it were unforeseeable that Everclear would be used around fire then Everclear would not contain warnings about its flammable nature. Further, no one understood the dangers associated with 190-proof alcohol than MGPI, the distiller who interjected the dangerous product into the stream of commerce and who profited from its sale.

The Plaintiffs have adequately pleaded that MGPI breached the warranty of merchantability as its product was "unreasonably dangerous and defective and lacking adequate safety features and warnings, for its intended and foreseeable end-users." *Compl.*, ¶¶82-84.

Similarly, the Plaintiffs have adequately pleaded that MGPI breached the warranty of fitness for a particular purpose in their Complaint, ¶¶87-89. "MGPI knew or should have known that purchasers and end-users of its products relied upon the skill and judgment of MGPI in the design, manufacture, distillation, distribution and sale of products including the 190-proof grain neutral spirits." *Id.*, ¶89.

3. The Plaintiffs' Complaint States a Right to Relief for Violations of G.L. c. 93A

The Plaintiffs submits that their ability to pursue claims under G.L. c. 93A involves an analysis and harmonization of applicable Massachusetts statutes and regulations.

G.L. c. 93A governs the "Regulation of Business Practices for Consumer Protection." Section 1, entitled, "Definitions," includes paragraph (b):

> b) "Trade" and "commerce" shall include the advertising, the offering for sale, rent or lease, the sale, rent, lease or distribution of any services and any property, tangible or intangible, real, personal or mixed… and shall include any trade or commerce directly or indirectly affecting the people of this commonwealth.

G.L. c. 93A, Section 2 provides:

Section 2: Unfair practices; legislative intent; rules and regulations

> Section 2. (a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful…

> …(c) The attorney general may make rules and regulations interpreting the provisions of subsection 2(a) of this chapter. Such rules and regulations shall not be inconsistent with the rules, regulations and decisions of the Federal Trade Commission and the Federal Courts interpreting the provisions of 15 U.S.C. 45(a)(1) (The Federal Trade Commission Act), as from time to time amended.

13

G.L. c. 93A, Section 9 states in relevant part:

Section 9. (1) Any person, other than a person entitled to bring action under section eleven of this chapter, who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by section two or any rule or regulation issued thereunder.

Pursuant to his authority, the Massachusetts Attorney General has promulgated regulations consistent with his authority vested in G.L. c. 93A, Section 2(c) including 940 CMR 3.00, et seq. 940 CMR 3.01: Definitions, provides:

Warranty/Guarantee.  The terms "warranty" or "guarantee" or any term connoting a warranty or guarantee as used in 940 CMR 3.00 are synonymous.  The terms apply also to purported warranties and guarantees and to any promise or representation in the nature of a warranty or guarantee.

A warranty that goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Goods to be merchantable must be…fit for the ordinary purpose for which such goods are used.

Further, 940 CMR 3.08(2) states:

Warranties: It shall be an unfair and deceptive act or practice to fail to perform or fulfill any promises or obligations arising under a warranty.  The utilization of a deceptive warranty is unlawful.

Other Massachusetts statutory law applicable to a Chapter 93A analysis includes G.L. c. 106, Article 2, Section 2-318.

Section 2–318. Lack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer, seller, lessor or supplier of goods to recover damages for breach of warranty, express or implied, or for negligence, although the plaintiff did not purchase the goods from the defendant if the plaintiff was a person whom the manufacturer, seller, lessor or supplier might reasonably have expected to use, consume or be affected by the goods. The manufacturer, seller, lessor or supplier may not exclude or limit the operation of this section.

Finally, there has been a broad array of Federal court and Massachusetts court decisions interpreting and applying these statutes and regulations.  Notably, this Court has most recently held that:

14

Chapter 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2(a). To assert a Chapter 93A claim, a plaintiff must allege, "(1) a deceptive act or practice on the part of the defendant; (2) an injury or loss suffered by the plaintiff, and (3) a causal connection between the [D]efendants' deceptive act or practice and the plaintiff's injury." Wagner v. Fed. Home Loan Mortg. Corp., 494 F.Supp. 3d 80, 87 (D. Mass. 2020) (citation and quotation omitted). Chapter 93A defines "an unfair and deceptive act or practice" to include "fail[ure] to perform or fulfill any promises or obligation arising under a warranty." South Shore Hellenic Church, Inc. v. Artech Church Interiors, Inc., 183 F. Supp. 3d 197, 219 (D. Mass. 2016) (quoting 940 C.M.R. 3.08(2)). The SJC has held that when an implied warranty claim and a Chapter 93A claim are based on the same "theory of injury and the same set of alleged facts, they should survive or fail under the same analysis." Iannacchino v. Ford Motor Co., 888 N.E.2d 879, 889 (Mass. 2008) ("in view of the interconnected nature of the plaintiffs' c. 93A and breach of implied warranty claims," the reasons that support the outcome of the Chapter 93A claim also warrant the same outcome for the breach of implied warranty claim).As a general rule, "a breach of warranty constitutes a violation of [Chapter 93A]." Maillet v. ATF-Davidson Co., 552 N.E.2d 95, 100 (Mass. 1990).

Lama-Wolobah as Pers. Representative of Est. of H.W. v. Paqui, LLC, No. 4:24-CV-12016-MRG, 2026 WL 907418, at *20 (D. Mass. Mar. 31, 2026)

The Massachusetts Attorney General, consistent with the authority vested in G.L. c. 93A, has promulgated regulations which include, inter alia, 940 CMR 3.08(2) which declares that the failure to fulfill or perform obligations is an unfair or deceptive act in violation of G.L. c. 93A. The regulations further explicitly include the warranty of merchantability. 940 CMR 3.01. Massachusetts case law is in accord.

The Attorney General, pursuant to G.L. c. 93A, § 2(*c* ), has promulgated a regulation providing that "[i]t shall be an unfair and deceptive act or practice to fail to perform or fulfill any promises or obligations arising under a warranty." 940 Code Mass.Regs. § 3.08(2) (1986). The regulations specifically include the implied warranty of merchantability under the definition of "warranty." 940 Code Mass.Regs. § 3.01 (1986).

Maillet v. ATF-Davidson Co., 407 Mass. 185, 193 (1990). Further, in Maillet, the Supreme Judicial Court upheld the trial judge's finding of a 93A violation due to the defendant's breach of

warranty. "The judge determined that the breach of warranty constituted a violation of c. 93A, § 2." Id., at 189.

While MGPI states that "Chapter 93A is not an additional remedy available for every tort or breach of contract claim," *MGPI Memo* at 15, the claims by the Plaintiffs as pleaded, state that not only is the breach of warranty a 93A violation as expressly determined by the Attorney General but that it is also the combination of MGPI's conduct (negligence) and interjecting a defective product into the stream of commerce (breach of warranty) which provides the additional basis for their 93A claims.  See, id., at 193, ("The judge concluded that the defendant violated G.L. c. 93A, § 2, because of the defendant's negligence and the breach of the implied warranty of merchantability.").

When that proposition is coupled with this Court's recent decision in the Lois Lama-Wolobah case, and decisions from the SJC which recognize, "An implied warranty claim and a c. 93A claim are based on the same economic theory of injury and the same set of alleged facts, they should survive or fail under the same analysis," Iannacchino v. Ford Motor Co., 451 Mass. 623, 634–35 (2008), the motion to dismiss should be denied. As stated, the implied warranties were created in a business context, the sale of Everclear in Massachusetts, and this act satisfies the trade or commerce requirements of G.L. c.93A.  Further the Attorney General's explicit regulation declaring a breach of the warranty of merchantability as a violation of G.L. c. 93A should be dispositive of Luxco's motion to dismiss the c. 93A claims.

MGPI's reliance on the decision in Mavilia v. Stoeger Indus., 574 F. Supp. 107, 111 (D. Mass. 1983) to support the proposition advanced that "remote bystanders," *MGPI Memo*, p. 19 cannot recover for breach of warranty, is misplaced.  In Mavilia, a wrongful death action was brought against a gun manufacturer, when an innocent bystander was struck by a stray bullet.

16

United States District Court Judge Garrity dismissed the plaintiff's breach of warranty claim based upon his finding that the "gun is not inherently defective; manufacturers and sellers therefore do not breach their warranties of fitness in supplying them to members of the general public." *Id*.  There was no finding that the plaintiff's decedent's status as an innocent bystander somehow precluded recovery.

4.   The Plaintiffs' Complaint States a Right to Relief Under Agency and Alter Ego Theories

Count Five alleges that MGPI is liable for Luxco's tortious conduct under theories of agency and alter ego liability. Compl. ¶¶ 104-111.

a.   Massachusetts Law Governs the Veil-Piercing Analysis.

A federal court sitting in diversity applies the choice-of-law rules of the forum state. <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496 (1941). Massachusetts has adopted a "functional" approach to choice of law that considers the policy interests of the relevant jurisdictions and the factual contacts between the parties, the transaction, and the forum. <u>Bushkin Assocs., Inc. v. Raytheon Co.</u>, 393 Mass. 622, 631-32 (1985). For tort claims, Massachusetts courts look to the state with the most significant relationship to the occurrence and the parties. <u>Cosme v. Whitin Mach. Works, Inc.</u>, 417 Mass. 643, 646-7 (1994).

Here, Massachusetts has the most significant relationship to this dispute. The product was sold in Massachusetts, the tortious injuries occurred in Massachusetts, the Plaintiffs were injured in Massachusetts, and the allegedly deceptive marketing and inadequate warnings were directed at and reached Massachusetts consumers. Compl. ¶¶ 25-27, 33, 52, 74. Moreover, the question at issue is not an internal corporate governance matter governed by the state of incorporation, but whether MGPI's pervasive operational control over Luxco should render MGPI liable for torts

committed in Massachusetts. Courts regularly apply forum-state veil-piercing law in such circumstances, because the interests of the state where the tort occurred and where the injured party resides are paramount.  Massachusetts law therefore governs the veil-piercing analysis.

    b.   The Complaint Satisfies Massachusetts's Veil-Piercing Standard.

Under Massachusetts law, the corporate veil may be pierced where there is "a confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the party responsible for performance of an obligation." My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. 614, 619 (1968). The SJC has identified twelve factors relevant to the alter ego analysis, including common ownership, common management, interrelation of operations, and financial integration. Attorney General v. M.C.K., Inc., 432 Mass. 546, 555 (2000) (applying My Bread Baking factors). The corporate veil may also be pierced where "there is active and direct participation by the representatives of one corporation, apparently exercising some form of pervasive control, in the activities of another and there is some fraudulent or injurious consequence of the intercorporate relationship." My Bread Baking Co., 353 Mass. at 619.

The Complaint alleges far more than a passive parent-subsidiary relationship. It alleges: (a) MGPI's complete acquisition of Luxco for $475 million (Compl. ¶ 69); (b) integration of Luxco's business into MGPI's organizational structure through a unified Branded Spirits segment (Compl. ¶ 72); (c) installation of Luxco's CEO as MGPI's Board Chairman (Compl. ¶ 71); (d) appointment of combined-entity executives operating under unified MGPI policies (Compl. ¶ 73); (e) consolidation of all manufacturing, marketing, distribution, and product safety decisions under MGPI's corporate framework (Compl. ¶ 74); and (f) pervasive operational control over

Luxco's day-to-day business decisions, far exceeding ordinary parent-subsidiary oversight (Compl. ¶¶ 105-107).

These allegations plausibly establish that the corporate separation between MGPI and Luxco has been "obliterated" through unified management and integrated operations, and that MGPI should be held responsible for Luxco's tortious conduct. Compl. ¶ 110. At the very least, whether the relationship between MGPI and Luxco supports veil piercing is a fact-intensive inquiry that cannot be resolved on a motion to dismiss. See Attorney General v. M.C.K., Inc., 432 Mass. at 555 (noting the fact-intensive nature of the alter ego inquiry).

By asserting unified control over Luxco's operations while simultaneously disclaiming responsibility for Luxco's tortious conduct, MGPI would be permitted to use the corporate form as a shield for manifestly unjust results, specifically, to evade responsibility for a defective and unreasonably dangerous product for which MGPI now claims no responsibility despite having assumed complete operational control. Compl. ¶ 111. This is precisely the injustice that the veil-piercing doctrine was designed to prevent. *My Bread Baking Co.*, 353 Mass. at 619-20.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendant MGP Ingredients, Inc.'s Motion to Dismiss in its entirety. In the alternative, to the extent the Court finds any count deficiently pleaded, Plaintiffs respectfully request leave to amend pursuant to Fed. R. Civ. P. 15(a).

Respectfully submitted,
The Plaintiffs,
By Their Attorney,

*/s/ David W. Heinlein*

_____
David W. Heinlein (BBO#550598)
HEINLEIN BEELER MINGACE
& HEINEMAN, P.C.
276 Union Avenue
Framingham, MA 01702
(508) 626-8500
dheinlein@hbmhlaw.com


**CERTIFICATE OF SERVICE**

I hereby certify that on May 12, 2026, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


*/s/ David W. Heinlein*

_____
David W. Heinlein, Esq.