UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| YVETTE DIGAN, LORDEVER DIGAN, AND GRACE DIGAN,<br><br>    Plaintiffs,<br><br>    v.<br><br>MGP INGREDIENTS, INC., MASSACHUSETTS FINE WINES & SPIRITS, LLC D/B/A TOTAL WINE & MORE, RYAN ADDECHE, TREVOR BOWEN, JULIAN TAGUE, JAMES GIKAS, ANDREW MITCHELL, THEO SAWYERS, RICHARD HUGHES, PHILIP CLAY, CHRISTINE ZIEV, WORCESTER POLYTECHNIC INSTITUTE, THE FRATERNITY OF PHI GAMMA DELTA, INC., PI IOTA CHAPTER OF PHI GAMMA DELTA, INCORPORATED, ZETA PSI FRATERNITY, INC., PI TAU ELDERS, INC., LUXCO, INC., HENRY PHARRIS, AND JOHN DOES 1-30,<br><br>    Defendants. | No. 4:26-cv-40099-MRG |

**DEFENDANTS PHILIP CLAY, CHRISTINE ZIEV, AND WORCESTER POLYTECHNIC INSTITUTE'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS COUNTS XVI, XVII, XXII AND XXIII OF THE COMPLAINT**

1

This is the *fourth* lawsuit[1] filed by Plaintiffs' counsel against one or more of the defendants arising out of the events of May 13, 2025.  As against Philip Clay, Christine Ziev (together, the "Individual WPI Defendants"), and Worcester Polytechnic Institute ("WPI" and together with Clay and Ziev, the "WPI Defendants"), this lawsuit fares no better than those prior efforts.  Plaintiffs' negligence claims do not allege that either Mr. Clay or Ms. Ziev participated in or had any prior knowledge of the May 13, 2025 incident, much less that they committed any specific acts of negligent conduct leading to Yvette Digan's injuries.  The derivative loss of consortium claims likewise fail to plausibly allege that the WPI Defendants were legally responsible for Yvette Digan's injuries.  The WPI Defendants owed no duty of care to Yvette Digan, who is not a WPI student and who was attending a party at a property that was neither owned nor operated by WPI.  And a duty of care cannot be inferred from the Complaint's general allegations that WPI—like many higher education institutions throughout the Commonwealth and the nation—has enacted various rules and regulations relating to fraternities in which its students may participate.  Moreover, the Complaint fails to plausibly allege that Yvette Digan's injuries were a foreseeable result of pouring an accelerant onto an open flame and causing an explosion, especially where Yvette Digan has elsewhere alleged that the very same explosion was not foreseeable to even the individual that poured the accelerant.  For all these reasons, the Court should dismiss Counts XVI, XVII, XXII and XXIII of the Complaint as against the WPI Defendants.

---

[1] *See Digan v. Pharris et al.*, No. 25-cv-11448-MRG (filed May 22, 2025); *Digan v. Luxco, Inc.*, No. 25-cv-40091-MRG (filed July 13, 2025); *Digan et al. v. MGP Ingredients, Inc.*, No. 26-cv-40009 (removed January 20, 2026; voluntarily dismissed January 27, 2026).  This third lawsuit, No. 26-cv-40009, which is substantially similar to the case presently before this Court, was originally filed by Yvette Digan, Lordever Digan, and Grace Digan in Worcester Superior Court before it was removed to federal court.  It too named Philip Clay, Christine Ziev, and WPI (among others) and asserted claims of negligence and loss of consortium.

2

*First,* as explained in greater detail below, Counts XVI, XVII and XXII,[2] which are levelled against the Individual WPI Defendants, do not allege that Mr. Clay and/or Ms. Ziev had anything to do with the events giving rise to this lawsuit, much less that either of them committed any "specific act of negligent conduct" leading to the Plaintiffs' injuries. *See Doe v. Emerson Coll.*, 153 F. Supp. 3d 506, 515-16 (D. Mass. 2015). Accordingly, under long-established Massachusetts precedent the Plaintiffs' claims against the Individual WPI Defendants must be dismissed. *Id.*; *see also Lyon v. Morphew*, 424 Mass. 828, 831-32 (1997); *Bash v. Clark Univ.*, 2006 WL 4114297, at *5 (Mass. Super. Ct. Nov. 20, 2006).[3]

*Second*, Count XXIII, the lone claim asserted against WPI in this Complaint, also cannot survive. That Count purports to assert a "loss of consortium" claim by Yvette Digan's parents against WPI. *See* Compl. ¶¶ 198-205. But under Massachusetts law, a parental loss of consortium claim may only be asserted "against any person who is legally responsible for causing [a minor child's or adult child's] injury." Mass. Gen Laws ch. 231, § 85X.

As a matter of law, WPI cannot be held "legally responsible" for the injuries that Yvette Digan allegedly suffered on or about May 13, 2025. This is because (as WPI previously argued to this Court)[4] WPI owed no duty of care to Yvette Digan. Indeed, such a duty to a non-student would not exist even if the alleged incident had occurred on university property. *See, e.g.,*

---

[2] Count XVI asserts negligence against Mr. Clay, Count XVII asserts negligence against Ms. Ziev, and Count XXII asserts a loss of consortium claim against both Mr. Clay and Ms. Ziev, among others. Compl. ¶¶ 160-63, 164-67, 190-97.

[3] In this regard, Plaintiffs' efforts to allege claims against individual WPI employees in this action fail for the very same reason as the prior attempts to raise such claims by Timothy Lopes. *See Lopes v. Pharris et al.*, No. 25-cv-40082, ECF No. 66 at 8-11 (explaining that amended complaint fails to state a claim against the individually named WPI employees because it cites only the employee's general job responsibilities and fails to allege any specific acts of negligence by those employees).

[4] *Digan v. Pharris et al.*, No. 25-cv-11448-MRG, ECF No. 85.

*Kavanagh v. Trs. of Bos. Univ.*, 440 Mass. 195, 203 (2003); *Brody v. Wheaton Coll.*, 74 Mass. App. Ct 1105, at *2 (2009) (unpublished).[5] For that reason alone, the Plaintiffs' loss of consortium claim against WPI must be dismissed.

Nor can a duty of care to Yvette Digan be inferred from the Complaint's general allegations that WPI has enacted various rules and regulations relating to Greek life. *See generally* Compl. ¶¶ 13-15, 35. Massachusetts courts have consistently declined to impose a duty of care on colleges and universities simply because they have enacted policies designed to encourage better and safer behavior by their students. *See, e.g., Brody*, 74 Mass. App. Ct 1105, at *2 (declining at 12(b)(6) stage to find that college had assumed a duty of care to a non-student through its "institution of alcohol policies").

A ruling by this Court suggesting that such oversight is alone sufficient to establish a duty of care, especially to a non-student, would result in dramatic and unprecedented expansion of potential tort liability for colleges and universities. *Accord Doe v. Brown Univ.*, 304 F. Supp 3d 252, 261 (D.R.I. 2018) (dismissing negligence claim against university for injury suffered at on-campus fraternity and acknowledging "the serious implications [that] would attend holding universities like Brown liable for the torts of their students"); *see also Emerson Coll.*, 153 F. Supp. 3d at 514 ("Massachusetts does not impose a legal duty on colleges or administrators to supervise the social activities of adult students. . . . Imposing such an affirmative duty on colleges would be impractical and unrealistic.").

In addition, even if a legal duty were to exist (and it does not), Yvette Digan's negligence claims against the WPI Defendants would fail because she has not plausibly alleged proximate causation, or that her injuries were foreseeable to the WPI Defendants, an issue that this Court

---

[5] *Digan v. Pharris et al.*, No. 25-cv-11448-MRG, ECF No. 85-1.

has recently recognized "may be determined as a question of law where there is no set of facts that could support a conclusion that the plaintiff's injuries were within the scope of liability" for the defendants. *Lama-Wolobah v. Paqui, LLC*, 2026 WL 907418, at \*4 (D. Mass. Mar. 31, 2026) (Guzman, J.). Courts have dismissed negligence claims for lack of foreseeability even where the plaintiff had alleged that the institutional defendant had some knowledge of the danger posed. *See Emerson Coll.*, 153 F. Supp. 3d at 515 ("even assuming that Emerson should have been aware as a general matter that its students may be subject to sexual assaults, it does not follow that Emerson could reasonably be expected to anticipate and prevent a sexual assault occurring at an off-campus party").[6] Here, even crediting Yvette Digan's conclusory allegation regarding the WPI Defendants' awareness of dangerous activities at fraternities and supposed failure to take corrective action, *Digan v. Pharris et al.*, No. 25-cv-11448, ECF No. 1 ¶¶ 35, 37,[7] the WPI Defendants cannot have foreseen that a fraternity member would pour an accelerant onto a fire at a fraternity party, causing an explosion and injuring a non-student. *See id.*; *see Litowsky v. Asco Power Techs., Inc.*, 4 F. Supp. 3d 328, 330 (D. Mass. 2014) (even where plaintiff alleged that defendants had actual or constructive knowledge of harms, dismissal was appropriate because plaintiff had "no reasonable expectation of proving that his injury was a foreseeable result of the

---

[6] In granting Emerson's motion for judgment on the pleadings as to the negligence claim, the Court implicitly rejected the complaint's allegations that Emerson's alcohol policies "acknowledge" both the foreseeability of sexual assaults and the inability to consent to sexual assaults at colleges, and Emerson's "lax enforcement" of those policies likewise created an environment in which such assaults were "manifestly foreseeable." *See Emerson Coll.*, 153 F. Supp. 3d at 515; *Doe v. Emerson Coll.*, No. 14-cv-14752, ECF No. 1 ¶¶ 126-127, 129. The Court ultimately found that the complaint did "not appear to allege that Emerson should have known, or reasonably could have known, that the MIT student or Student A posed a danger to Doe. . ." *Emerson Coll.*, 153 F. Supp. 3d at 515 (quoting *Kavanagh*, 440 Mass. at 203-04).
[7] To be clear, this Court need not credit this conclusory statement of causation which is "unadorned by any factual assertions that might lend it plausibility." *A.G. by & through Maddox v. Elsevier, Inc.*, 732 F.3d 77, 82 (1st Cir. 2013).

defendant's negligent conduct").

For those reasons, as well as the others previously advanced to this Court in the related case,[8] Plaintiffs' loss of consortium claim in this action must be dismissed.

## I. BACKGROUND[9]

According to the Complaint, Yvette Digan is a resident of Hong Kong Special Administrative Region, People's Republic of China, who was an exchange student at Boston University and "visiting Worcester Polytechnic Institute . . . at the time of the incident." *See* Complaint ¶ 1, ECF No. 1.  There is no allegation that Yvette Digan is, or has ever been, a student at WPI.

Lordever and Grace Digan are Yvette Digan's parents, and residents of Hong Kong Special Administrative Region, People's Republic of China.  *Id.* ¶¶ 2, 3.

On May 13, 2025, Yvette Digan attended a social gathering at a fraternity house that is owned, operated, and overseen by Pi Tau for the "use and benefit" of Zeta Psi and its Pi Tau chapter at WPI.  *Id.* ¶¶ 18, 33.  The fraternity house is located on private property.  *See id.* ¶ 18.

The Complaint alleges that during this social gathering, members of Zeta Psi were playing a game called "fire stump" in which they used a hammer to drive nails into a tree stump while "flammable liquid burned on top" thereof.  *Id.* ¶ 45.  At some point, fraternity members added more "highly flammable Everclear alcohol" onto the "active fire."  *Id.* ¶¶ 49-50.  A fireball subsequently erupted, engulfing Yvette Digan in fire.  *Id.* ¶¶ 51, 52.  She was hospitalized for severe burn injuries to substantial portions of her body.  *Id.* ¶¶ 53-55.

There are no allegations concerning the conduct, knowledge, or involvement of the

---

[8] *See Digan v. Pharris et al.*, No. 25-cv-11448, ECF Nos. 85, 87, 96, 97.
[9] The WPI Defendants recite the allegations as pled in the Complaint for the limited purpose of this Motion to Dismiss.

Individual WPI Defendants in the events at issue in the Complaint, offering only role-based allegations. Indeed, the Complaint does not allege that any Individual WPI Defendant or any other WPI representative hosted, attended, or was aware of the social gathering on May 13, 2025. Instead, the Complaint includes a series of allegations purporting to describe the WPI Defendants' relationship with fraternities generally.

The only allegations in the Complaint concerning the Individual WPI Defendants are in the "Parties" section of the Complaint. Compl. ¶¶ 13, 14. Mr. Clay is alleged to be the "Senior Vice President for Student Affairs and Enrollment Management at Worcester Polytechnic Institute and in this capacity exercised control over and responsibility for the implementation and enforcement of practices and procedures governing fraternities and sororities." *Id.* ¶ 13. Ms. Ziev is alleged to be the "Director of Student Activities at Worcester Polytechnic Institute and in this capacity exercised control over and responsibility for the implementation and enforcement of practices and procedures governing fraternities and sororities." *Id.* ¶ 14.

As to WPI, Plaintiffs aver that it "actively promotes Greek life as part of its campus community, exercises substantial control over fraternity activities and conduct, maintains a detailed regulatory framework governing fraternities, and has the authority to discipline fraternities and their members for policy violations." Compl. ¶ 15. The Complaint also claims that WPI's "polic[i]es, procedures, rules," and bylaws "prohibit[] the use of open flames and presence of high-proof alcohol at fraternity events." *Id.* ¶ 35.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff must "plead[] factual content that allows the

7

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  To assess whether a complaint states a plausible claim, the Court must first "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements[.]" *Zenon v. Guzman*, 924 F.3d 611, 615-16 (1st Cir. 2019) (citation omitted).  Second, the Court must "take the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." *Id.* (citation omitted).

### III. ARGUMENT

**A.**    **The Negligence Claims Against The Individual WPI Defendants Must Be Dismissed.**

Plaintiffs allege that Mr. Clay owed Yvette Digan a "duty of reasonable care in his capacity as the Senior Vice President for Student Affairs and Enrollment Manager at WPI," Compl. ¶ 161, and that Ms. Ziev owed Yvette Digan a "duty of reasonable care in her capacity as the Director of Student Activities at WPI." *Id.* ¶ 165.  However, where the Complaint fails to allege any "specific acts of negligent conduct" by the Individual WPI Defendants, there is no cognizable duty to the injured party, and the negligence claim must be dismissed.  *See Emerson Coll.*, 153 F. Supp. 3d at 515-16 (D. Mass. 2015) (granting motion for judgment on the pleadings for tort claims).

In the Commonwealth, it is axiomatic that "employees are [only] liable for torts in which they personally participated." *Lyon v. Morphew*, 424 Mass. 828, 831-32 (1997) (collecting sources).  Indeed, "[a]bsent a common law or statutory duty, an employee may not be held individually liable to a third person." *Id.* at 832 (citing *Leavitt v. Glick Realty Corp.*, 362 Mass. 370, 374 (1972)).  Accordingly, having "general supervisory . . . responsibility, alone, is not

enough to support a finding that" an individual "personally participated in acts causing harm to [a] plaintiff." *Id.* at 833 (hospital chief operating officer not personally liable to plaintiff in the absence of evidence of acts relevant to the claims against the corporation that were performed personally by the officer) (citing *Glick Realty Corp.,* 362 Mass. at 374 (president, treasurer, and clerk not liable for independent contractor's negligent maintenance of electrical system; no involvement in repair or construction experience); *Buck v. Clauson's Inn at Coonamessett, Inc.,* 349 Mass. 612 (1965) (golf course president not liable for spectator's injury; not involved in maintenance of course); *Burnham v. Beverly Airways, Inc.,* 311 Mass. 628, 637 (1942) (president and treasurer of corporation operating airport not individually liable for plane crash; not involved in flight operations) (other citation omitted)).

Moreover, "[w]hile expectations of colleges and their administrators may be evolving," this Court has not found "that currently existing social values or customs are consistent with imposing a legal duty on college administrators, which would be owed directly to students." *Doe v. Amherst Coll.*, 238 F. Supp. 3d 195, 227-28 (D. Mass. 2017) (granting motion on pleadings as to plaintiff's negligence claim and declining to find that college administrators had legal duty "relating to the implementation of student disciplinary proceedings"). Similarly, "Massachusetts does not . . . impose a common-law or statutory duty on administrators to enforce university policies." *Emerson Coll.*, 153 F. Supp. 3d at 515 (citing *Bash v. Clark Univ.*, 2006 WL 4114297, at *5 (Mass. Super. Ct. Nov. 20, 2006) (granting motion to dismiss and declining to rule that college administrators had a legal duty to prevent student from ingesting illegal drugs because such a duty is inconsistent with the expanded right of privacy college students now enjoy)).

The allegations in the Complaint concerning the Individual WPI Defendants are even

weaker than those deemed insufficient in *Emerson College*. *See* 153 F. Supp. 3d at 516-17. There, the Court granted the individual defendants' joint motion for judgment on the pleadings even though the student plaintiff had identified concrete actions on the part of each of the individual defendants that she claimed were negligent. *See id.* However, the plaintiff had "fail[ed] to identify what specific actions by the defendants were negligent *and* how they breached a legal duty." *Id.* (emphasis added).

The Complaint in this case fails to identify *any* specific acts of allegedly negligent conduct on the part of either Mr. Clay or Ms. Ziev, let alone the legal duties that these individuals supposedly breached with respect to Yvette Digan, a non-student. Again, there is not a single substantive allegation in the Complaint regarding the conduct of Mr. Clay or Ms. Ziev, except to explain their job responsibilities generally at WPI. *See* Compl. ¶¶ 13, 14. Plaintiffs have not alleged that any of the Individual WPI Defendants in any way created the conditions that led to Yvette Digan's injuries on May 13, 2025. The event admittedly did not occur on property owned by WPI, *see* Compl. ¶ 18, there is no allegation that any WPI employees (including either of Mr. Clay or Ms. Ziev) were at the event (let alone that they were involved in starting the fire), and, of course, there is no allegation that the Individual WPI Defendants had anything to do with the act of pouring an accelerant onto an open flame that caused an explosion and resulted in Yvette Digan's injuries.[10] Indeed, the Complaint "barely mentions" the Individual WPI Defendants at all. Compl. ¶¶ 13-14; *see Emerson Coll.*, 153 F. Supp. 3d at 516. And, again, the Individual WPI Defendants' responsibilities at WPI do not in and of themselves support or suggest an

---

[10] Nor could the WPI Defendants have had anything to do with the act of pouring an accelerant onto the open flame that caused the explosion and resulted in Yvette Digan's injuries, because she has herself conceded in a separate lawsuit before this Court that the explosion at issue was outside the realm of ordinary risk. *See, e.g.*, *Digan v. Luxco, Inc.*, No. 4:25-cv-40091, ECF No. 1, ¶¶ 3-4, 6, 100(c).

inference that these Individuals personally participated in any acts that caused Yvette Digan harm. *See Lyon*, 424 Mass. at 832.

These deficiencies in the Complaint, alone, foreclose Plaintiffs' claims against Mr. Clay and Ms. Ziev.

**B.      The Loss of Consortium Claims Must be Dismissed Because Plaintiffs' Allegations are Insufficient to Support a Conclusion That the WPI Defendants Are Legally Responsible for Yvette Digan's Injuries.**

Lordever and Grace Digan allege that they have suffered a loss of the comfort, society and companionship of their daughter, Yvette Digan, "as a result of the tortious conduct" of the WPI Defendants, among others. *Id.* ¶¶ 196, 204.

Under Massachusetts law, a parental loss of consortium claim can be brought "against any person who is legally responsible for causing [a minor child's or adult child's] injury." Mass. Gen. Laws ch. 231, § 85X. Such claims are derivative in nature and require an underlying tortious act. *See Yac v. Whaling City Junior/Senior High Sch.*, 2026 WL 555613, at *4 (D. Mass. Feb. 27, 2026); *Doe v. Dennis-Yarmouth Reg'l Sch. Dist.*, 578 F. Supp. 3d 164, 182–83 (D. Mass. 2022); *Harrington v. City of Attleboro*, 172 F. Supp. 3d 337, 354 (D. Mass. 2016).

Because Yvette Digan has not alleged that Mr. Clay and Ms. Ziev are legally responsible for her injury, her parents' derivative loss of consortium claim must also fail. Accordingly, Count XXII of the Complaint must be dismissed as to the Individual WPI Defendants.

As against WPI, the only cause of action raised in this Complaint is for loss of consortium. Compl. ¶¶ 198-205. Plaintiffs do not assert a tort claim against WPI in this lawsuit, seeking instead to ostensibly incorporate the allegations and causes of action Yvette Digan has raised in other cases to provide the underlying tortious conduct in support of the loss of

consortium claim here. *See id.* ¶¶ 199-200.[11] For the reasons set forth in WPI's pleadings in support of their Motion to Dismiss Yvette Digan's Complaint in one of those other cases, which WPI herein incorporates by reference pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, *see Digan v. Pharris et al.*, No. 25-cv-11448, ECF Nos. 85, 96, Yvette Digan has not plausibly alleged that WPI is legally responsible for her injury.

A finding that WPI is liable for injuries a non-student sustained at a fraternity party with no allegation that WPI had actual knowledge of or played any role in the incident would disrupt the careful balance Massachusetts courts have struck – even at the pleadings stage – between the safety and autonomy of (adult) students and the burdens on universities. *See, e.g.*, *Emerson Coll.*, 153 F. Supp. 3d at 514-15 ("[I]t is unclear how Emerson could reasonably prevent its own students from consuming alcohol, never mind how it would prevent consumption by persons with whom it had no relationship at all." (citation omitted)); *Bash v. Clark Univ.*, 2007 WL 1418528, at *1-2 (Mass. Super. Ct. Apr. 5, 2007) ("recognizing a special relationship [where student died on campus of heroin overdose] would impose on university officials and staff an unreasonable burden that would be at odds with contemporary social values" and would encroach upon the "expanded right of privacy that society has come to regard as the norm in connection with the activities of college students[.]"). Therefore, Count XXIII of the Complaint must also be dismissed as to WPI.

---

[11] Plaintiffs specifically allege as follows: "Yvette Digan has commenced civil actions in the United States District Court for the District of Massachusetts against various defendants named herein. . . In those cases, the Plaintiff, Yvette Digan alleges that on or about May 13, 2025, the Defendants, Henry Pharris, Pi Tau Elders, Inc., Zeta Psi Fraternity, Inc., and WPI, owed her a duty of reasonable care, that jointly and severally Pharris, Pi Tau Elders, Zeta Psi, and WPI, breached their duties of care to her and that the negligence of each of them was a cause of her harms and losses." Compl. ¶¶ 199-200.

For the foregoing reasons, the WPI Defendants respectfully request that the Court grant this Motion to Dismiss the Complaint with prejudice.

Respectfully submitted,

**PHILIP CLAY, CHRISTINE ZIEV, AND WORCESTER POLYTECHNIC INSTITUTE,**

By their attorneys,

/s/ *Rebecca M. O'Brien*
Daniel J. Cloherty (BBO #565772)
dcloherty@clohertysteinberg.com
Victoria L. Steinberg (BBO #666482)
vsteinberg@clohertysteinberg.com
Kristine C. Oren (BBO #705730)
koren@clohertysteinberg.com
Rebecca M. O'Brien (BBO #693592)
robrien@clohertysteinberg.com
CLOHERTY & STEINBERG LLP
One Financial Center, Suite 1120
Boston, MA  02111
Telephone: (617) 481-0160

Dated: May 26, 2026

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on May 26, 2026, this document was filed through the ECF system and will be sent electronically to the registered participants, as identified on the Notice of Electronic Filing.

<u>*/s/ Rebecca M. O'Brien*</u>
Rebecca M. O'Brien

14